Good morning, Your Honor. Ari Karakalos, representing appellants. Husband and wife, Sombath Kim and Bunari Prak, natives of Cambodia, both seeking asylum in the Board of Immigration Appeals. As this Court is well aware, appellants' case is procedurally unique in that it allowed two separate applications to be considered together. And in so doing, the immigration judge used material and evidence drawn out of one application and certain testimony from one side, and used it to find adverse credibility as to the other petition. What's the matter with that? We do it all the time. You ask the husband what's the story, you ask the wife what's the story, different stories, you think somebody's not telling a true story. There's no problem with that fundamentally, but the way the Court handled it was procedurally flawed. And what I'm getting to there is that it's understandable that you're going to take one testimony and then you're going to take someone else's testimony. But if you don't allow the second person to at least come back and explain certain inconsistencies, give them a chance at it, the Ninth Circuit has continually held that that's a violation of due process. So I don't remember that in this case, though. Was there a... There was a situation in which one party, the husband, testified that, well, they asked him, where was your wife at the time of your arrest? And he answered, she was at home, she was selling. But instead she was in prison. Instead she was actually in prison. Right. But when he was away, when he was arrested, he was actually in a different part of Cambodia. So it's natural for him not to exactly know, or it's also natural for him to maybe have misunderstood the question. But the thing that strikes me, counsel, you're making a procedural attack here based on consolidation, and yet there's a significant overlap in the evidence, is there not? They both claimed persecution arising out of arrest from the 1998 demonstration. I think actually they declared something a little bit different than that. They didn't say that we were arrested arising out of the 1998 demonstrations. They were saying more we were arrested based on our association with the SRP party. They did engage in the 1998... The whole purpose of the 1998 demonstrations was because their particular party felt that the election had been stolen from them, correct? Sure, yes. So they demonstrated, and those demonstrations lasted, depending on whose story you believe, either two weeks or a month or maybe it was six weeks. No one seems to really have it quite straight, which is a problem for you. So I don't understand why that's irrelevant. I think it's irrelevant because it doesn't necessarily go to the heart of the issue here, which is... It's the whole reason they got arrested, because they participated in the demonstration. But that's not contested. They've testified that they have participated in the demonstration. Well, if that's not contested, why didn't they list it in their asylum application? For whatever reason, that certainly doesn't go to the heart of the claim. The basis for their arrest, which they claim led to their persecution, does not go to the heart of their claim. You're going to have to help me on that one. What other link is there in the application that ties them to the party? I'm sorry, I didn't really understand the question. Well, if they're claiming that they are entitled to relief because of their association with the political party and the demonstration is irrelevant, what other link is there? Well, Mr. King was a journalist. He was writing on topics that were pro-SRP. I mean, we have that in the record. And we know that by association, family association can also be tied to party affiliation. So there we have evidence in the record for that as well. What I'm saying more so is that the fact that he didn't incorporate something into his initial application, if we look at numerous cases that have come down from the Ninth Circuit, it's immaterial to the credibility finding. It goes a little too far. People often get cut some slack in the Ninth Circuit where there are inconsistencies on the theory that the applications are often prepared for them by careless preparers or dishonest preparers. They get a chance to explain so that it's possible for us to see whether the BIA was unfair and giving credence to the difference. But it's not to say that they're irrelevant. Sure, and I can appreciate that point. I was bothered here because the husband's asylum application doesn't say he was demonstrating. It says he was gathering and interviewing people for news, that his testimony was demonstrating. And then the wife's application does not say that they fractured her skull. And then her testimony, she does say that they fractured her skull. And I didn't see an explanation of the difference. And those are both things that I can't see how you could forget or be mistaken on or tell different stories on. I can see how one might simply say, well, I don't need to mention every single thing that happened to me in my application. Every single little thing like skull fracture? Well, let me give you an example of another case to draw parallels to. There was the, for example, the Smolniakova-Gonzalez case, 422F3rd, 1037, coming down in 2005. In that case, we have Russian Jews being persecuted. And in this case, the asylum seeker had her wrist slashed. Talk about this case because we have cases that can be difficult to reconcile in this area, frankly. Sure. What is the explanation for not mentioning the skull fracture in the asylum application? In this case? Mm-hmm. I don't know that there was one given. I don't know that there was an opportunity given. That's what I'm asking. What do you mean no opportunity? The way it usually works is the lawyer for the petitioner does a direct. The lawyer for the agency does a cross. Sure. The lawyer for the petitioner does a redirect and rehabilitates. Every now and then we get no fair opportunity because the IJ gets real impatient and says, I don't want to hear it, cuts off the redirect where the rehabilitation is attempted. And that's the way we lawyers always do the rehabilitation, though, and put in the explanations. Sure. But I think if there are material. . . The cross says, just answer my question, and it comes out kind of misleading. And then the redirect rehabilitates by getting the explanation out. Sure. I understand that. But I think in these kind of situations when there is something that would otherwise be a material omission or inconsistency, I think that there is a duty on the part of the immigration judge to clarify and to give notice to the person. I'm having a problem with your inability to explain the skull, the failure to mention a skull fracture in your application. Could you please explain why? It's a due process issue. I mean, this is a very serious decision that the immigration judge and the Board of Immigration Appeals is making. So I think due process comes in here. . . So it's not enough that she had all the opportunity in the world on redirect to explain the inconsistency. It's a denial of due process if the IJ doesn't sua sponte, request an explanation. I believe so. I believe so. I'm not, right now I'm a little lost in terms of citation. Counsel, can you help me? I'm looking at ER 63, which is a portion of the immigration judge's ruling in which he says. . . Sir, what page of the immigration judge's ruling? Page 19 of the immigration judge's ruling. And he's saying that in his testimony before the court, he, which I assume he was kin, indicated that not only were they party members, but they were active in the big demonstration that occurred in September of 1998. Also, the asylum application never mentions the involvement in the demonstration of September of 1998, which was the triggering event which apparently caused their arrest. There was no credible explanation as to why this was left out, other than to say they were not asked the question. But this apparently was the basis for both respondents' arrest. I read that as saying he did ask them to explain the inconsistency between their testimony and the asylum application, but that they couldn't come up with a credible answer. Am I misreading what the immigration judge said? No, I don't think you're misreading it. I just think that if I recall correctly from the record, he also said that he had planned on discussing it at the hearing. We've got the testimony here. Why don't you just point us to the page that will do the job for you? You probably have it. If you wouldn't mind, I'm looking for it, and I can address it on my rebuttal, if that's okay. Okay. Do you want to save a little time then? I would like to save a little time. Okay. But I'd also like to point out some other cases that the Ninth Circuit. That's all? You've got 40 seconds to either save time to point it out or not. Okay. I think also I'd like to cover the issue of demeanor. It's up to you. They used a blanket statement for demeanor. They made no specific findings regarding demeanor. I think the Ninth Circuit has clearly held that that's inappropriate and that's. The BIA didn't rely on that, did it, when it upheld the adverse credibility determination? Yes. The BIA did rely on it. It was the first thing they mentioned. I think the failure of them to even address the cat claims is erroneous and reversible error. You're saying they relied on it when they say the immigration judge observed that? Correct. But they didn't say that they adopted and affirmed his decision, did they? The BIA's opinion? Page 2 of the excerpt. The BIA's opinion. Based the findings on an indictment but also on the Respondent's demeanor. We accord considerable deference to an immigration judge's observations regarding demeanor, as he or she is uniquely positioned to make such assessments. The problem with this is that the immigration judge never even made any findings regarding demeanor, which I think raises serious concerns when it comes to the validity of the findings of the immigration judge, at least as to that issue. Thank you, counsel. Counsel? We're ready for you. Good morning, Your Honor's counsel. My name is Margaret Cuney Taylor. I represent the government in this matter. A credibility finding different from the immigration judge's adverse credibility finding is not compelled here,  We do have some case law that I don't agree with it, actually, but it's our case law that says that the IJ is supposed to say, I'm bothered by this, what's your explanation? How do we deal with that here? Well, turning to the inconsistencies in the record regarding the circumstances of the arrest of Mr. Kim, the problem that was pointed out during Petitioner's argument of not allowing the question that you've just posed, Your Honor, of not allowing Ms. Prock to explain the inconsistency, just is inconsistent with the record. First of all, Why don't you tell me what page to look at in the excerpts where the testimony is? I can do that. If you look at page AR-197, it's clear from the record that Mr. Kim and Ms. Prock were not sequestered during each other's testimony. So when Mr. Kim stated that Ms. Prock was at home working, Well, you mean you can't look to your spouse? It shows that they're both sitting there. I'm sorry. You mean this language here, you can't look to your spouse? Yes, exactly. So that indicates that Mr. Kim and Mr. Prock got it the wrong way. Mr. Kim and Ms. Prock were not sequestered. They were in the room together. So Ms. Prock was listening while Mr. Kim was testifying regarding her whereabouts at the time of his arrest. And they were both represented. So when Mr. Kim said that Ms. Prock was at home working, and that is at Administrative Record 254, Ms. Prock knew that he had said something inconsistent. And they were both represented by counsel. At that point, it appears that either Ms. Prock or her attorney made some kind of strategic decision that Ms. Prock was not going to further explain why Mr. Kim did not know where she was at the time of the arrest. So your argument is that the lawyer and both petitioners knew full well about the inconsistency, had an opportunity to explain, and didn't. That's correct, Your Honor. Now, what about the scattered cases you find in F-3rd where we say that the IJ, before relying on some inconsistency, has to say to the petitioners, gee, I think there was an inconsistency here, could you give me your explanation for it? Well, there's further evidence in the record that Mr. Kim and Mr. Prock, I'm sorry, I'm mixing them up, I'll just say Kim and Prock, husband and wife, thank you, that the husband and wife were traveling together on their asylum applications. For example, Kim's written asylum application. I think you're now showing me another inconsistency where they had a full opportunity to explain and didn't. But I don't think you heard my question. Did the IJ ever point out to them that there was an inconsistency and invite them to explain it? Certainly the immigration judge did that as to Kim. He did? Yes. And where should I look? I think it's at 254 and 259, but let me just check to make sure that my notes are correct. Yeah, 258 and 259. The immigration judge says, how do you explain that discrepancy? That's pretty clear that he gave. That's just what I was asking. All right. So as to Mr. Kim, we have something very clear. As to Prock, there is no such clear sua sponte request or inquiry by the immigration judge. Is this case different procedurally? The thought just occurred to me. Normally we only have one witness, and it is the sole asylum applicant. That's often the case. And as I recollect, although I haven't reread every single Ninth Circuit case on the subject, we've reversed immigration judge Edwards' credibility determinations for failure to give the sole testifying asylum applicant the right to explain the inconsistency. Here it seems to me we have an unusual case. We actually have three witnesses, including Senator Thatch. Yes. And in part, the immigration judge based his adverse credibility determination on a conflict in the testimony between the witnesses as well as fraudulent documents, multiple use of false names. Does that distinguish this case from the run-of-the-mine Ninth Circuit case where we've held that due process requires an opportunity to explain the inconsistency? Well, certainly, as you've pointed out, Judge Tallman, this is an unusual situation in the immigration context. But this court has also held in Lee, 378 F3rd 959, that the immigration judge is entitled to look at the totality of the record and not to suspend common sense. And so applied to this situation, and that was not the situation in Lee, but applied to this situation where petitioners were effectively filing jointly, the immigration judge was certainly entitled to look at the whole ball of wax and look and see how the different parts worked or didn't work together. I agree with you, but I'm not sure that you've answered the question that I posed, which is it seems to me this is different from the sole witness case because the record is replete with the immigration judge pointing out inconsistencies within the evidence that he is viewing in total. And it includes inconsistencies between the testimony of the witnesses. For example, that the senator intervened to get their release by petitioning the Cambodian Supreme Court, and the senator says, no, I never did that. That's what makes this situation, it seems to me, different, doesn't it? It is different, but it is certainly, there's nothing to keep the immigration, it's certainly reasonable, which is really the standard that this court is reviewing. It's reasonable for the immigration judge to look at all of it. Well, let me spin this out a little further. It seems to me that it would be difficult, if not impossible, for the asylum applicant to then be asked by the immigration judge, how can you explain the inconsistency between what the witness says and your understanding that he petitioned the Supreme Court directly to get your release? Precisely, Your Honor. I mean, it would be impossible for one witness to explain what another witness had said. That comparison and juxtaposition is really the role of the immigration judge, not the witness. I mean, it just strikes me as a different situation from asking the witness to explain why his testimony today differs from what he wrote in his asylum application and swore was the truth. It is. It is distinct. Your Honors, I'd like to move to the omission in the I-589s, if you don't have any more questions on the inconsistencies. The 1998 demonstration participation that Ken and Prock undertook was certainly significant. And Ken himself said during his testimony, I was arrested because I was in the demonstration. That's at Administrative Record 242. Senator Thatch testified that they were arrested because of their participation in the 1998 demonstration. That's at AR 157. And their lawyer said in closing that the harm they suffered was as a result of their involvement in the demonstration of 1998, and that's at Administrative Record 264 and 265. So to say that their participation in 1998 in the demonstration was insignificant or that the immigration judge was speculating that it was significant is just contrary to the record. Thank you, counsel. Oh, thank you. Ken versus Holder is submitted. You elected to continue your argument through the end. Counsel, you used up all your time. Okay. Ken versus Holder is submitted. We'll hear Del Rio versus Astro.
judges: Kleinfeld, Tallman, Lawson